## HICKMAN et al. vs. KEMPNER.

1. **TAX DEEDS:** *Only prima facie evidence: Mistakes in, correctable.*
   Recitals in a tax-deed are only *prima facie* evidence that all necessary steps were taken; and may be corrected in equity for fraud or mistake, or denied and shown to be false.

2. **SAME:** *Recital of time of receiving tax-books, how contradicted.*
   The recital in a tax-deed, of the date of the collector's receipt of the tax-books, may be contradicted by his receipt to the clerk for them, showing a different date.

3. **TAX SALES:** *Premature filing of delinquent list avoids.*
   The filing of the delinquent list in the county clerk's office before the expiration of the time allowed for the payment of taxes, is premature, and avoids the sale.

4. **SAME:** *Payment on one tract and receipt for another.*
   Where the owner intends to pay the taxes on one tract, and so informs the collector, and pays him the proper amount, and the collector by mistake, gives a receipt for a different tract, and the one actually paid on is returned delinquent and sold for the taxes, the owner may show the actual payment against the purchaser at tax sale.

5. **SAME:** *Recital in deed, of wrong name of owner does not vitiate.*
   The false recital in a tax-deed that the land was assessed in the name of an unknown owner does not vitiate the sale.

6. **SAME:** *Owner seeking to avoid in equity, must pay lawful taxes.*
   Where an owner comes into equity to avoid an illegal sale of his land for taxes, he must tender the taxes actually due, and interest, but not the penalty and cost.

APPEAL from *Saline* Circuit Court in Chancery.
Hon. JABEZ M. SMITH, Circuit Judge.
*Rose,* for appellant.
*McCallum, contra.*

EAKIN, J. Kempner, claiming under a tax title, sued the tenant of appellants, in ejectment, to recover the lands described. The tenant disclaimed, and appellants, being the real claimants, were allowed to defend. They filed an equitable answer, upon which the cause was transferred to the equity docket, where both parties amended their pleadings. Kempner sought to have corrected an error in the recitals of the clerk's deed; and appellants, claiming to have paid the taxes upon the lands, and also that the proceedings under which the sale was made were illegal, sought to have the tax-deed canceled.

The pleadings and exhibits reveal the following facts:

The lands in 1868 were the property of appellants—the Frerets. They were assessed for that year in the name of "Freret & Bros.," together with other lands in the same section, and extended by the clerk upon the tax-books; which were placed in the collector's hands.

The agent of appellants, in paying their taxes, took a receipt from the collector for an amount sufficient to cover the taxes due on this tract, but in specifying the lands upon which taxes were paid, this particular tract was omitted and another tract in the same section inserted, which appellants did not own. It does not appear, however, that this was a clerical error of the collector; or that it may not have been an error in the agent himself in designating the lands upon which he desired to pay. The lands were returned by the collector on the seventh of June, 1869, as

Hickman et al. vs. Kempner.

delinquent, and a penalty of twenty-five per cent. imposed. For the taxes and this penalty the lands were advertised, and sold on the second of August, when the vendors of Kempner became the purchasers and in due time received a deed from the clerk. It recites that the assessor filed his assessment of lands and town lots in the clerk's office; that the clerk delivered the tax-books of the county for 1868, with the taxes extended, to the collector, with a warrant for collection, on the first day of February, 1869; that the lands in question were assessed in the name of unknown owners; that the taxes had not been paid; that the collector had returned the tract as delinquent, on the seventh day of June, 1869; that it had been duly advertised to be sold on the second day of August, 1869, for the taxes and *fifty per cent. penalty* with costs; that the land was then sold to the purchasers for sixty-four dollars; and that the time for redemption had expired.

The cause was heard upon pleadings and exhibits without other proof. The Chancellor found specially that the recital in the clerk's deed of the penalty of fifty per cent. was an error; that the land was actually sold for twenty-five per cent. penalty; and that the complainants ought to recover.

Without notice of the other issues, he decreed that the deed might be reformed in this respect; that complainants should recover the lands and have a writ of possession. Defendants appealed.

An inspection of the exhibits satisfies us that the Chancellor was correct in finding the recital of "fifty per cent." to have been a mistake. It was proper to correct it, and upon this point there is no error. Recitals in deeds can not be made *conclusive*, save as estoppels. In equity they

1. TAX DEEDS: Only *prima facie* evidence: Mistakes in, correctable.

Hickman et al. vs. Kempner.

may be corrected, on one hand for fraud or mistake; or may, on the other, be denied and shown to be false.

The deed of the clerk is only *prima facie* evidence that all necessary steps were taken.    *C. & F. R. R. Co. v. Parks, 32 Ark., 131.*

Defendants allege in their answer: That the tax-books were placed in the collector's hands on the nineteenth day of April, 1869, and contend, therefore, that the return of the lands as delinquent on the seventh of June, 1869, was premature ; that no penalty attached at that time ; and that the subsequent sale for taxes, penalty and costs, was unauthorized and void. The allegation is sustained by a certified transcript of the collector's receipt, the date of the filing. Was the return of the land, as delinquent, prematurely made; and, if so, does it avoid the sale ?

The act of February 19, 1869, " to aid in assessing and collecting taxes for the year 1868," which act has been several times considered by this court, as well as by the cotemporaneous practice of collectors and clerks, as applying in its general directions to all counties and as materially changing the policy of the act of July 23, 1868, provided, by section 8, " that the collector, immediately after receiving the tax-books, should give notice and attend at public places in each township, to receive taxes, at certain times, not to exceed sixty days from the time of receiving the books."

Section 10 provided that the taxes on all property should be paid within sixty days, or be deemed delinquent, and that a penalty of twenty-five per cent. should be added, to constitute and remain a lien upon the land.

Section 11 allowed the owner of delinquent lands to pay taxes on the same *with the accrued penalty*, at any time before sale.

Hickman et al. vs. Kempner.

Section 12 provided that the collector should make out, and return, a delinquent list of lands *within ten days after* said period of sixty days, and by section 14 it was made the duty of the clerk, immediately after said return, to advertise said lands for three weeks, to be sold for the taxes, penalty and costs, on the Monday next succeeding the expiration of the three weeks' notice.

The collector's receipt for the tax-books was required to be filed in the clerk's office, and a duplicate was required to be sent to the auditor. (See *sec. 6.*) There is exhibited with the answer a certified transcript of the receipt, dated nineteenth of April, 1869, and indorsed by the clerk, "filed April 19, 1869." This is evidence of more weight than the recital in the deed to the effect that the tax-books were placed in the collector's hands on the first day of February, 1869, and must in this case, on the pleadings and evidence before us, be taken as fixing the true date. The return was therefore premature by eleven days. It affected the rights of the owners materially, inasmuch as after the return a penalty attached, or was supposed to have done so. The collector, after their return as delinquent, could not receive the taxes without the penalty. If this return had any effect it was detrimental, and unauthorized, and therefore void. If it was a nullity, as we think, it gave the clerk no authority to advertise and sell the lands. No other return is shown after the expiration of the sixty days.

We do not think it well proven that defendants' agent meant to pay the taxes on this particular tract, although he probably had it in view to pay taxes on all defendants' lands which they did not wish to abandon. If he had intended to pay the taxes on this special tract, and had so advised the collector, and given him the proper amount, and the collector had by mistake given him a receipt with

2. ———: Recital of time of receiving tax books, how contradicted.

3. Tax Sales: Premature filing of delinquent list avoids.

4. ———: Payment on one tract and receipt for another.

the wrong description, the defendants might show the actual payment against a purchaser at tax sale. But the proof on this point fails in certainty. Men sometimes intentionally leave tracts out in paying, and at other times intentionally pay on tracts they do not own. It is not sufficient, against a receipt specifying particular lands, to say that the defendant did not own some of the lands included, and meant to pay only on what he owned, and that he did own other tracts which were assessed in his name. It is the duty of the tax-payer, himself, to appropriate in some manner the money paid, to the particular lands he wishes to clear. If he had done that, and inadvertently taken a mistaken receipt, he might complain. Nor is it any substantial objection to the clerk's deed that it falsely recites that the land was assessed in the name of unknown owners. This did not prejudice defendants, as the sale would, if otherwise correct, have been good, whether assessed in the name of the true owner or as unknown.

Inasmuch, however, as the sale was void on account of the premature return of the delinquent list, the Chancellor erred in his decree, so far as he grants relief to complainant. The defendants do not offer to pay the actual taxes, and their cross-complaint should have been also dismissed; or they should have been required to amend and make tender of the same, with interest, but without penalties or costs of sale.

Let the decree be reversed, and the cause be remanded for such other and further proceedings as to the Chancellor shall seem meet and consistent with this opinion.